UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| VAUGHN M. WHISNANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 3:04-CV-469 |
| | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of plaintiff's motion for summary judgment [Doc. 11] and the defendant's motion for summary judgment. [Doc. 13]. Plaintiff Vaughn M. Whisnant seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

The ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through June 30, 2003.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's borderline intellectual functioning and asthma are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The claimant's mental impairment imposes no more than slight restriction of activities of daily living, and no more than moderate limitation of ability to maintain social functioning or to sustain concentration, persistence, or pace. He has experienced no episodes of mental decompensation, and he functions adequately outside of a highly supportive setting.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: light exertion, provided he receive accommodation for his moderate difficulties with relating to co-workers or the public, responding appropriately to workplace changes, functioning independently, maintaining concentration and attention, demonstrating reliability, and performing activities within a schedule or maintaining attendance and punctuality within customary tolerances.

7. The claimant is unable to perform any of his past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 C.F.R. §§ 404.1563 and 416.963).

9. The claimant has a "marginal" literacy level (20
C.F.R. §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any
past relevant work and/or transferability of skills
is not an issue in this case (20 C.F.R. §§ 404.1568
and 416.968).

11. The claimant has the residual functional capacity
to perform a significant range of light work (20 C.F.R.
§§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do
do not allow him to perform the full range of light
work, using Medical-Vocational Rule 202.17 as a
framework for decisionmaking, there are a significant
number of jobs in the national economy that he could
perform. Examples of such jobs appear in the body
of this decision.

13. The claimant was not under a "disability," as defined
in the Social Security Act, at any time through the date
of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

(Tr. 17-18).

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. 42 U.S.C. § 405(g). See Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004); Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987); Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. See Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); see also Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (unless the court is persuaded that the Secretary's findings are

3

"legally insufficient," they should not be disturbed). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet, 823 F.2d at 920 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).

Plaintiff contends that because he was represented by a nonattorney, the ALJ had an obligation to develop the record. Plaintiff testified that his brother worked with him and that his father got him the job, thereby leading the vocational expert ("VE") to consider the plaintiff's employment required special accommodation. Plaintiff insists that the ALJ should have obtained testimony from plaintiff's brother, father, employer, or anyone who knew his functional ability. Next, plaintiff asserts that the ALJ should have clarified plaintiff's IQ level. Plaintiff notes that he received Supplemental Security Income until age 18 based on a finding of mental retardation and contends that the ALJ should have clarified the "aberration" of the IQ test given at age 18. Furthermore, plaintiff contends that there was only a single page of progress notes from Dr. Hanson of the Family Psychiatric Center and that the ALJ erred in not attempting to obtain further psychological records from him. (Tr. 186). Next, plaintiff maintains that the ALJ had the burden to see that a consultative physical examination was performed when he was aware that there was no explanation for the apparent reduction in plaintiff's IQ score.

Next, plaintiff asserts that the ALJ did not give adequate consideration to the results of the consultative psychological examination of Ms. Garland and of his entire school record. Plaintiff maintains that Ms. Garland had the advantage of observing him in order to form a clinical opinion of his intellectual functioning and that based on her clinical observations, she estimated that he was mentally retarded. Also, plaintiff contends that plaintiff's test scores could have been within the mentally retarded classification. Plaintiff insists that up to 1998, the scores

4

placed plaintiff in the mentally retarded classification and all of his classes were in special education.

In his argument that the hypothetical was incomplete, plaintiff insists that the hypothetical did not include the finding of the school psychologist found the plaintiff had significantly weak adaptive behavior, which he maintains was corroborated by the consultative examiner who found his ability to adapt was very limited.

The Commissioner argues that plaintiff's arguments are without merit. With respect to plaintiff's argument that the ALJ failed to adequately develop the record, the Commissioner points out that plaintiff was represented by a paralegal at the hearing and is currently represented by an attorney. Therefore, this case does not involve an unrepresented claimant. Moreover, the Commissioner maintains that the ALJ's reliance on plaintiff's testimony benefitted plaintiff because the plaintiff testified that his brother helped him perform his job, so the VE concluded that plaintiff's work involved "a special work situation because of help from the brother," thereby finding that plaintiff could not perform his prior job. (Tr. 62-63, 75). The Commissioner insists that testimony from plaintiff's father and brother regarding his work history would presumably have corroborated plaintiff's testimony, and was, therefore, unnecessary.

Next, plaintiff argues that the ALJ failed to develop the record because he did not "clarify" the alleged "aberration of the one [IQ] test given at age 18." However, the Commissioner contends that the "aberration" was an IQ test conducted in December 2002, when plaintiff was 22 years old. (Tr. 106, 227). The Commissioner notes that the record contains results from three IQ tests: the first, administered in June 1998, revealed a verbal IQ of 70, a

5

performance IQ of 75, and a full scale IQ of 72 (Tr. 71, 171, 227); the second, administered in October 1998, revealed a verbal IQ of 74, a performance IQ of 75, and a full scale IQ of 72 (Tr. 183, 227); and the third, administered in December 2002, revealed a verbal IQ of 54, a performance IQ of 56, and a full scale IQ of 57. (Tr. 190, 227). Thus, the Commissioner maintains that, as the ALJ noted, the results of the first two IQ tests suggest that the results of the third IQ test were not valid. (Tr. 73).

Moreover, although plaintiff suggests that Dr. Hanson treated plaintiff over a period of time, the Commissioner notes first that despite the fact that plaintiff is currently represented by an attorney, he has not submitted any other records from Dr. Hanson. Furthermore, the Commissioner points out that there is no indication that Dr. Hanson provided any treatment or spoke with plaintiff more than once; that Dr. Hanson did not state that he treated plaintiff; that plaintiff testified during the hearing that he did not receive any mental health treatment; that plaintiff completed a form stating that he had not "been seen by a doctor/hospital/clinic or anyone else for emotional or mental problems that limit[ed his] ability to work;" and that plaintiff completed a report in which he stated that he did not receive any treatment after he filed his claim for benefits. (Tr. 50, 132, 172, 186). In light of the foregoing, the Commissioner insists that because the evidence strongly indicates that no treatment records exist, the ALJ did not err by failing to request records from Dr. Hanson.

The Commissioner points out that state agency psychologist Dr. Kurstas reviewed the record, including all three sets of IQ scores, and explicitly concluded that the results of the third IQ test were invalid (Tr. 227), concluding that plaintiff had borderline intellectual functioning rather than mental retardation. (Tr. 213, 228). Similarly, state agency psychologist

6

Dr. Abraham reviewed the October 1998 and December 2002 IQ results and concluded that plaintiff had borderline intellectual functioning, rather than mental retardation. (Tr. 196, 204).

Plaintiff argues that the ALJ should have accepted the conclusions of Pamela Branton, who conducted a consultative psychological exam in December 2002, that plaintiff's December 2002 IQ scores were valid and was mentally retardation. (Tr. 188). Plaintiff claims that the ALJ should have accepted Ms. Branton's diagnosis because she had "the advantage" of observing plaintiff. However, the Commissioner contends that the ALJ reasonably rejected Ms. Branton's conclusion that plaintiff was mentally retarded because she insists that Ms. Branton, who saw plaintiff only once, was not the only individual who observed the plaintiff. Timothy Copeland, the school psychologist who administered the October 1998 IQ test also observed plaintiff (Tr. 183-84), and Alice Garland, who administered the June 1998 IQ test, presumably observed plaintiff as well. (Tr. 71, 227-28). Thus, the Commissioner maintains that plaintiff's reliance on Ms. Branton's observatory "advantage" is misplaced. The Commissioner maintains that while Ms. Branton concluded that the December 2002 IQ scores were valid, the Commissioner maintains that the reasonableness of her conclusion was questionable because she was unaware of the June and October 1998 IQ scores, which exceeded 70. (Tr. 71, 171, 227). Thus, the Commissioner maintains that the ALJ reasonably discounted the 2002 IQ scores in light of the two sets of IQ scores in 1998, plaintiff's statement that he had no head injury (Tr. 187), and the opinions of state agency psychologists Dr. Kurstas and Dr. Abraham.

Although plaintiff argues that the ALJ erred in not obtaining a consultative physical examination "when he was aware that there was no explanation for the apparent reduction in the IQ," the Commissioner contends that the ALJ was not required to obtain a

7

consultative physical examination because the evidence was sufficient to reach a decision. Specifically, the Commissioner notes that plaintiff "reports no history of a head injury," so there was no obvious organic basis for the IQ drop. (Tr. 187). Furthermore, the Commissioner points out that while plaintiff also complained of allergies, asthma, hearing loss, leg weakness, and fatigue, he did not claim that these physical ailments were responsible for the drop in IQ scores, noting that plaintiff acknowledged that he passed vision and hearing screening tests and admitted that, except for his use of an inhaler, he did not take any medication or receive any medical treatment. (Tr. 182). Thus, in light of the foregoing, the Commissioner maintains that the ALJ did not err by failing to order a consultative examination.

The Commissioner disputes plaintiff's argument that "[a]ll of his classes were in special education," noting that his high school transcript showed he took three special education classes in ninth and tenth grades, but only one special education class in eleventh and twelfth grades and that his high school transcripts showed that he passed the Tennessee Competency Tests for language and math. (Tr. 175-76). Moreover, although plaintiff argues that the ALJ failed to consider "several mental restrictions" including the "significantly weak adaptive behavior" reported in the October 1998 evaluation, the Commissioner maintains that the ALJ fully considered the October 1998 evaluation report that showed plaintiff had low adaptive functioning (Tr. 185), but did not identify any specific work-related restriction that resulted from the weak adaptive functioning. (Tr. 183-85). The Commissioner maintains that Dr. Abraham, who subsequently reviewed the October 1998 evaluation, translated plaintiff's adaptive behavior deficits into specific work-related limitations (Tr. 207-08), and the ALJ accepted and incorporated into his RFC finding Dr. Abraham's opinion that plaintiff had problems with adaptive functioning and that these problems resulted in moderately limited abilities to function

8

independently and respond appropriately to changes in the workplace. (Tr. 17, 207-08). Also, plaintiff argues that the hypothetical question should have included Mr. Copeland's finding that had weak or limited adaptive behavior, but the Commissioner maintains that Mr. Copeland did not identify any work-related limitations caused by the adaptive functioning deficit.

I find the Commissioner's arguments persuasive. Although plaintiff argues that the ALJ failed to develop the record, plaintiff bears the ultimate burden of proof on the issue of disability. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); <u>Richardson v. Heckler</u>, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability."). In this case, plaintiff was represented at the hearing and is represented on appeal. Furthermore, as the Commissioner points out, plaintiff has not offered any additional notes, records, or reports from Dr. Hanson. <u>Landsaw v. Secretary of Health and Human Services</u>, 803 F.2d 211 (6th Cir. 1986) (the burden of providing a complete record rests with the claimant).

Moreover, plaintiff has the burden to show that he meets or equals an impairment listed in Appendix 1 to the Regulations, <u>Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983), and must meet all of the elements of the listed impairment. <u>See Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1083 (6th Cir. 1987).

Listing 12.05, Mental retardation, is defined as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. § 404, Subpt. P, App. 1.

With respect to the IQ scores, I agree with the Commissioner that the ALJ reasonably relied on the opinions of state agency psychologists Drs. Kurstas and Abraham that plaintiff had borderline intellectual functioning and not mental retardation because they had access to both sets of plaintiff's 1998 IQ scores, whereas Ms. Branton did not. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (state agency medical and psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation).

The decision to obtain a consultative examination is usually a matter within the ALJ's discretion, <u>Foster v. Halter</u>, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary"), and such an examination is generally required only "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim." 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

Again, I agree with the Commissioner that the record evidence was sufficient and that a consultative examination was not warranted because the plaintiff admitted that he did not have any head injury, and he did not even argue that any of his physical impairments caused the drop in IQ scores.

Lastly, I agree with the Commissioner that the 1998 IQ reports did not include specific work-related limitations, and that, except for the test results themselves, there was

nothing to incorporate into the hypothetical. Stanley v. Secretary of Health and Human Services, 39 F.3d 115, 118 (6th Cir. 1994). Accordingly, I am of the opinion that the ALJ properly considered all of plaintiff's credible limitations and properly relied on VE testimony in response to a hypothetical question that accurately reflected those limitations. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).

In light of the foregoing, I find that the plaintiff has failed to meet his burden of proving that he is disabled and that substantial evidence supports the ALJ's decision that the plaintiff is not disabled. It is hereby **RECOMMENDED**[1] that the plaintiff's motion for summary judgment [Doc. 11] be **DENIED** and that the defendant's motion for summary judgment [Doc. 13] be **GRANTED**.

Respectfully submitted,

   s/C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).